**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| WALTER URBANOWICZ, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>SUSAN W. COLVIN, )<br>Commissioner of the Social Security )<br>Administration, )<br>      Defendant. ) | CAUSE NO.: 2:11-CV-231-PRC |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Attorney's Fees Under the Equal Access to Justice Act [DE 30], filed by Plaintiff on December 4, 2012. Plaintiff seeks a total EAJA award of costs of $385.83 and attorney fees of $12,051.26. On December 18, 2012, the Commissioner filed a response brief in opposition to Plaintiff's fee request, and Plaintiff filed a reply on December 28, 2012. For the following reasons, the Court grants the motion.

**PROCEDURAL AND FACTUAL BACKGROUND**

On June 26, 2007, Plaintiff filed an application for disability insurance benefits and supplemental security income. Plaintiff's applications were denied initially and upon reconsideration. A hearing was held on August 24, 2009, before Administrative Law Judge ("ALJ") Mona Ahmed. On October 9, 2009, the ALJ issued a decision denying Plaintiff's applications. Plaintiff filed a Request for Review, and the Appeals Council denied this request on April 28, 2011, leaving the ALJ's decision the final decision of the Commissioner.

On June 29, 2011, Plaintiff filed a Complaint with this Court, seeking review of the Commissioner's final decision. On December 2, 2011, Plaintiff filed an opening brief, submitting the following four arguments in favor of reversal or remand: (1) the ALJ, after rejecting all medical

opinions of record, did not have a legitimate basis for her residual functional capacity finding; (2) the ALJ failed to properly weigh Plaintiff's treating physician's opinion; (3) the ALJ failed to properly weigh the opinion of Plaintiff's treating psychiatrist and failed to consider that opinion in its entirety; and (4) the ALJ improperly determined Plaintiff's credibility by not providing a complete analysis and equating part-time education to full-time work.

On September 27, 2012, the Court issued an Opinion and Order remanding this matter for further proceedings and judgment thereon was entered. The Court granted remand on the following issues: (1) the ALJ did not properly consider or explain the weight given to the treating physician's opinion that Plaintiff's emotional factors aggravated his ulcerative colitis, and because the Court was remanding for that error, the Court further directed the ALJ on remand to incorporate an analysis of the fact that the treating physician is a specialist when weighing the treating physician's opinion; and (2) the ALJ did not properly weigh the opinion of the treating psychiatrist for several, detailed reasons. Although the Court generally upheld the credibility determination, because the case was being remanded on the issues of the weight giving to the treating physician and treating psychiatrist, the Court directed the ALJ on remand to reconsider the credibility finding to the extent that Plaintiff's credibility was impacted by the re-weighing of the doctors' opinions. Finally, although the Court did not find merit with Plaintiff's challenges to the RFC determination, because the case was being remanded on the weight given to the treating providers, the Court directed the ALJ to solicit information regarding whether Plaintiff routinely requires frequent access to a bathroom.

The fully briefed Motion for Attorney's Fees under the Equal Access to Justice Act is now before the Court.

## ANALYSIS

In his motion, Plaintiff asserts that the Commissioner's position was not substantially justified. *See* 28 U.S.C. § 2412(d)(1)(B). In the opening motion, Plaintiff requests an award of fees in the amount of $11,451.89 for attorney and legal assistant work. Plaintiff seeks fees for 61.9 attorney hours at an hourly rate of $181.63, the hourly rate for November 2011, the month in which the majority of the legal work was performed by counsel in this case, representing the cost of living adjustments allowed by 28 U.S.C. § 2412(d)(2)(A)(ii) when employing the "All items" figure provided by the Consumer Price Index. Plaintiff also requests an hourly rate of $95.00 for 2.2 hours of work performed by legal assistants. Plaintiff seeks costs of $385.83. In the reply brief, Plaintiff requests additional compensation for 3.3 hours at the hourly rate of $181.63 for reviewing the Commissioner's response brief and preparing the reply brief for a total of $599.37 in additional attorney fees. Thus, the total award requested by Plaintiff is $12,051.26.

The EAJA allows a prevailing plaintiff to recoup reasonable attorney fees incurred in litigation against the Commissioner of Social Security "unless the court finds that the position of the [Commissioner] was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 154 (1990); *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004). Pursuant to 28 U.S.C. § 2412(d)(1)(B), a fee application must be filed within thirty days of a court's final judgment and must satisfy the following requirements: (1) a showing that the applicant is a "prevailing party;" (2) a showing that the applicant is "eligible to receive an award;" (3) a showing of "the amount sought, including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses

were computed;" and (4) an "alleg[ation] that the position of the [Commissioner] was not substantially justified." 28 U.S.C. § 2412(d)(1)(B); *see also Scarborough v. Principi*, 541 U.S. 401, 405 (2004); *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1078-79 (7th Cir. 2000) (setting forth the elements of § 2412(d)(1)(A) & (B)).

In this case, it is uncontested that Plaintiff is the prevailing party, that the motion is timely, and that Plaintiff has asserted that the Commissioner's position was not substantially justified.[1] The Commissioner does not contest the number of attorney and legal assistant hours for which Plaintiff seeks fees, nor does the Commissioner contest the hourly rate proposed by Plaintiff. Rather, the Commissioner contends that, because the position of the Commissioner was "substantially justified," fees and costs are not warranted. The Commissioner argues that the issues necessitating remand were not so pervasive as to render the Commissioner's overall position unreasonable.

When considering whether the Commissioner's position was substantially justified, the Court analyzes the "position of the [Commissioner,]" which refers to the conduct of the Commissioner throughout the civil action, including pre-litigation conduct. 28 U.S.C. § 2412(d)(2)(D); *Golembiewski*, 382 F.3d at 724; *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). The Court must consider whether the Commissioner's pre- and post-litigation "position was grounded in: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Golembiewski*, 382 F.3d at 724 (citing *Hallmark Constr.*, 200 F.3d at 1080). The Court

---

[1] 28 U.S.C. § 2412(d)(1)(B) provides that an application for fees must be submitted within thirty days of final judgment. The statute further provides that a "final judgment" is one "that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G). Because the Commissioner is afforded sixty days to file a notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1)(B), the filing period for the instant motion for attorney fees is ninety days from the date the district court judgment is entered.

4

evaluates the factual and legal support for the Commissioner's position throughout the entire proceeding. *See Hallmark Constr.*, 200 F.3d at 1080. The Court need only make one determination regarding the Commissioner's conduct during the entire civil action. *Jean*, 496 U.S. at 159; *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996). "[F]ees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigation position may have been substantially justified and vice versa." *Marcus*, 17 F.3d at 1036. The Court must undertake a global analysis of the government's position because whether that position was substantially justified will rarely be decided by a single issue. *See Hallmark Constr.*, 200 F.3d at 1080.

Although the EAJA does not define "substantial justification," the Supreme Court has defined the term to mean "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Golembiewski*, 382 F.3d at 724. Expanding on this definition, the United States Court of Appeals for the Seventh Circuit explained, "'Substantially justified' does not mean 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' or if reasonable people could differ as to the appropriateness of the contested action." *Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992) (citing *Pierce*, 487 U.S. at 565). The substantial justification standard is different than the substantial evidence standard, which is used to evaluate the merits of a claimant's request for remand. *See Pierce*, 487 U.S. at 578-79. The Commissioner bears the burden of proof in showing that her litigation position was substantially justified. *See Pierce*, 487 U.S. at 565; *Golembiewski*, 382 F.3d at 724.

Although the Court affirmed the ALJ's decision related to the credibility and residual functional capacity determinations, the Court remanded on the basis that the ALJ erred in evaluating

5

and weighing the opinion of Dr. Varghese, Plaintiff's treating psychiatrist, which is a violation of regulation and case precedent. Contrary to the Commissioner's position, the ALJ's failures in this regard were not merely the result of the ALJ failing to properly articulate his decision.[2] Rather, the ALJ erred in how she evaluated and weighed Dr. Varghese's opinion under the applicable legal standard. After setting forth the legal standards, the Court identified four specific errors. In addition, the Court rejected the Commissioner's arguments made in support of the weight the ALJ gave to Dr. Varghese's opinion.

First, the Court found that the ALJ did not properly weigh the opinion of Dr. Varghese. This was troubling because the ALJ gave little weight to the opinion of Dr. Varghese but gave controlling weight to the opinion of consultative examiner Dr. McKian. Dr. Varghese had been Plaintiff's treating psychiatrist, had consistently treated Plaintiff for his depression since 2007, and had given the mental RFC assessment in August 2009, shortly after the hearing. In contrast, Dr. McKian was a consultative examiner, a psychologist, who examined Plaintiff on one occasion in August 2007, two years prior to the hearing and two years prior to Dr. Varghese's RFC opinion. Moreover, significant, relevant events had occurred in Plaintiff's life since the time of Dr. McKian's opinion with which Dr. Varghese was familiar. In addition, the primary issue before Dr. McKian two years earlier was Plaintiff's drug rehabilitation, whereas Plaintiff reported being "clean" for well over two years at the time of Dr. Varghese's opinion.

Second, the Court found that Dr. Varghese's treatment notes appeared to support his RFC determination, and the ALJ did not discuss how the treatment notes were inconsistent with Dr.

---

[2] At one point in the Commissioner's brief, the Commissioner also states that "this case turned primarily on the adequacy of the ALJ's articulation of his *credibility* finding." Def. Br., p. 4 (emphasis added). This is incorrect. The Court upheld the ALJ's credibility finding. The Court remanded because the ALJ failed to properly weigh the treating psychiatrist's opinion.

6

Varghese's RFC opinion, one factor considered in the weight given to a treating psychiatrist. The Court noted that Dr. Varghese's detailed treatment notes generally supported his RFC opinion and that the ALJ did not discuss Dr. Varghese's explanation in his August 2009 RFC opinion that, "based on claimant's participation in school, he is unable to maintain routine schedule for prolonged periods of time," AR 794, or Dr. Varghese's explanation that Plaintiff requires frequent redirection to complete tasks. AR 795.

The Commissioner argued that the ALJ had properly rejected the opinion of Dr. Varghese that, due to depression and anxiety stemming from relationships, medical problems, and school, Plaintiff could not complete a workweek without interruption from psychological symptoms. However, the Court faulted the Commissioner's specific arguments because only one of the several factual bases the Commissioner identified in support of the ALJ's ruling was actually relied upon by the ALJ. The Court also recognized that Dr. Varghese's limiting opinion did not go to Plaintiff's social interactions but rather to Plaintiff's ability to complete a normal workday without interruptions, remember work-like procedures, maintain attendance, sustain a routine, perform at a consistent pace, and deal with normal work stress. Thus, the Court found that the ALJ did not offer good reasons for rejecting Dr. Varghese's opinion. In fact, the Court found that the one reason the ALJ did give–the general facts regarding Plaintiff's enrollment in college–were contradicted by Dr. Varghese's comment cited above. The ALJ did not explain this inconsistency.

Third, the Court found the ALJ's own internal analysis to be inconsistent. The ALJ wrote: "It is unclear how the claimant's difficulties with maintaining good grades in an intellectually challenging course such as trigonometry would translate to simple, unskilled work, and therefore the restrictions found by Dr. Varghese make little sense when considering the claimant's focus of

7

study." AR 23. However, the ALJ's summary was faulty because Dr. Varghese did *not* limit Plaintiff to simple, unskilled work. Rather, as noted by the ALJ in the previous paragraph of her decision, Dr. Varghese had found that Plaintiff had "very good or satisfactory ability to carry out short and simple instructions" and had "a satisfactory ability to understand, remember, and carry out detailed instructions, and deal with the stress of semi-skilled or even skilled work." *Id*. The Court found the ALJ's reasoning unclear.

Fourth, the Court found that Dr. Varghese's opinion that Plaintiff was *not* limited in his ability to maintain socially appropriate behavior and interact appropriately with the public begged the question of why the ALJ crafted an RFC limiting Plaintiff's contact with the public. The Court found that the answer was apparently because the ALJ relied on the opinion of Dr. McKian. The Court found that the decision to rely on Dr. McKian over Dr. Varghese on this specific issue was curious given the factors listed above–that Dr. Varghese gave a contemporary opinion, whereas Dr. McKian's opinion was two years old, and that Dr. McKian's evaluation was made in the months following Plaintiff's decision to stop taking drugs.

The Court then found that the weight given to Dr. Varghese's opinion is relevant at both Step Three and the RFC analysis. On the RFC form, Dr. Varghese checked the box that "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." AR 796. This is the same requirement for meeting the second criteria of Paragraph C of Listing 12.04 for Affective Disorders. The Court found that nowhere in her Step Three analysis or later in the RFC did the ALJ discuss this opinion of Dr. Varghese that is consistent with a finding of disability at Step Three based on the listing. The ALJ found that Plaintiff did not meet Listing 12.04

8

at the Paragraph C criteria and cited the Psychiatric Review Technique filled out by state agency doctor Joseph A. Pressner, Ph.D. on August 28, 2008, as the basis for this finding. The Court found that, although the ALJ is not required to conduct an analysis of the weight given to Dr. Varghese's opinion at both steps, the failure to even acknowledge Dr. Varghese's favorable Step Three opinion was error as the ALJ was required to consider all parts of his report. Even if the ALJ had properly discussed and discounted this opinion of Dr. Varghese as to the listing, Dr. Varghese's mental RFC opinion would have changed the ALJ's RFC determination.

For all those reasons, the Court found that the weight the ALJ gave to Plaintiff's treating psychiatrist, Dr. Varghese, was not supported by the evidence of record and that the ALJ erred in addressing the evidence and the factors to be considered. For this reason, the Court reversed and remanded for further proceedings.

In addition to the error regarding the treating psychiatrist, the Court also remanded on the additional, independent basis that the ALJ had failed to properly evaluate Plaintiff's treating physician's opinion that emotional factors aggravate or play a part in the severity of flare ups of Plaintiff's ulcerative colitis. The Court found the Commissioner's response regarding a restriction to work involving minimal interactions with the public and no more than occasional contact with supervisors and coworkers to be non-responsive because the issue was not Plaintiff's mental RFC but rather the impact of his emotional and mental state on his colitis and the resulting limitations. This, too, was not a failure by the ALJ to sufficiently articulate the reasons for her decision; rather this was a failure of the ALJ to consider a symptom.

Because the Commissioner's positions on the issues remanded by the Court were without substantial justification, and were contrary to established law, Plaintiff is entitled to reasonable fees

pursuant to the EAJA. Plaintiff does not object to the Commissioner's contention that the fees should be awarded to Plaintiff rather than to the attorney.

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS** Plaintiff's Motion for Attorney's Fees Under the Equal Access to Justice Act [DE 30] and **ORDERS** that Plaintiff is awarded a total of $12,051.26 in attorney fees and $385.83 in costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED this 15th day of May, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:	All counsel of record.